SAMMY SANDERS and ROBIN SUE SANDERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sanders v. Commissioner
Docket No. 2940-76.
United States Tax Court
T.C. Memo 1979-352; 1979 Tax Ct. Memo LEXIS 169; 39 T.C.M. (CCH) 27; T.C.M. (RIA) 79352; September 5, 1979, Filed *169 Held: Amount of tip income determined. Held,further: Understatement of income not due to reasonable cause. Sammy and Robin Sue Sanders, pro se. John P. Tyler, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioners' income taxes and additions thereto pursuant to section 6653(a) [1] as follows: Year
Deficiency
Section 6653(a)
1972
$234.00
$15.35
1973
453.03
29.51
1974
351.87
22.85
The issues presented for our consideration [2] are: *170 (1) whether petitioner Robin Sue Sanders received unreported tip income while employed as a waitress in the amounts of $1,404.58, $2,346.39, and $1,796.60 for the years 1972, 1973, and 1974, respectively; and (2) whether petitioners' underpayment of tax, if any, in each of the years was due to negligence or intentional disregard for rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Sammy and Robin Sue Sanders, [3] filed joint Federal income tax returns for the taxable years 1972, 1973, and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. During the years in issue and at the time the petition herein was filed, petitioners were residents of Kansas City, Missouri. Robin Sue Sanders was employed by Mr. Steak Restaurant (hereafter Mr. Steak) from June 1972 through December 31, 1974. She was paid an hourly wage of $1.00 in 1972 and 1973, and $1.15 *171 in 1974. Her work schedule was as follows: Monday through Thursday, 11:30 a.m. to 4:30 p.m.; Friday, 10:00 a.m. to 2:00 p.m.; and Saturday, 5:30 p.m. to 8:30 p.m. In each of the years in issue, petitioner reported as income from Mr. Steak only the amount shown on her W-2 form: $1,265.19 in 1972; $2,054.32 in 1973; and, $1,812.47 in 1974. Mr. Steak did not serve breakfast and during lunch catered mainly to secretaries, bank tellers, department store employees, and businessmen who worked in the area. Lunch prices were 15% to 40% lower than dinner prices. Most people spent only half an hour for lunch and the busiest time was between 12:00 and 1:00. The lunch menu consisted mainly of hamburgers and sandwiches and the bill would run between one and three dollars. Tips were generally small and averaged between 15 and 25 cents. In the evenings, Mr. Steak served mainly families and tips were generally larger than during the day. The dinner "rush" was between 6:00 and 7:00. Petitioner spent approximately an hour in the morning preparing her tables and about half an hour to an hour before the end of her shift cleaning up during which time she was not waiting on customers. Apparently, *172 however, she generally arrived at work at 11:00, a half an hour before she was actually required to be there. Occasionally, petitioner would stay late because of cleanup. She also had a half an hour lunch break and two ten-minute breaks. Tips were not pooled and each waitress paid the lunch busboy fifty cents a day. The waitresses were also required to pay for breakage and checks left unpaid by customers. Petitioner served three booths and three tables. The booths could hold four persons each and the tables could hold between four and six. Petitioner never worked at functions in which there was no tipping involved. In the statutory notice of deficiency, respondent determined that petitioner had unreported tip income as follows: 1972
1973
1974
Sales of restaurant
$383,437.00
$392,741.00
Tip %
.09
.09
Tips -- all waitresses
$ 34,509.33
$ 35,346.09
Robin's wages
815.69
1,411.50
=.0598
=.0965
All waitresses
13,616.00
14,928.00 $ 2,060.09 $ 3,321.35
Less 10% for Busboys
206.01
332.14
Corrected Tips $ 1,854.08 $ 2,989.21
$2,358.94 *
Reported Tips
449.50
642.82
562.60
Statutory Notice
Adjustment $ 1,404.58 $ 2,346.39
$1,796.60[sic]
*173 OPINION Respondent maintains that because petitioner did not maintain adequate books and records of her tip income, he was entitled to reconstruct her income with the method used in the notice of deficiency. Petitioner first argues that she maintained adequate books and records which accurately reflected her tip income and which she used to compute the amount of tips she reported on her income tax returns; therefore, she asserts respondent is not entitled to reconstruct her income. ; . In the alternative, petitioner contends that respondent's formula is inaccurate. She bases this contention upon her reconstruction of income using the bank deposits and expenditures method of recomputation. This calculation shows that deposits and expenditures were less than the gross income reported on petitioners' tax returns, which, she argues proves that her tip income must have been reported. Petitioner maintains that her average tips in 1972 were 50 to 55 cents an hour. On audit, respondent *174 determined that petitioner's books and records were inadequate because they were not considered either timely kept nor the original records. Although petitioners maintain that their records were accurate, respondent is not required to accept at face value a taxpayer's records which he has determined were inadequate. Unfortunately, petitioners have failed to introduce these records into evidence and we cannot even attempt to determine their accuracy. Petitioners' uncorroborated testimony that they reported tip income accurately based upon these records, which were not (at least for 1972 and 1973) the original records, is insufficient evidence for us to find that they were adequate. . Thus, respondent is entitled to reconstruct their income. Reconstruction of tip income by use of formulas has been approved in many instances, see ; . Respondent is not required to reconstruct a taxpayer's income by use of several different methods as long as the method adopted reasonably reflects the taxpayer's *175 income. Cf. . Therefore, the fact that petitioners' reconstruction may lead to a different result than respondent's is not necessarily relevant. Such recomputations do not require mathematical exactness. Cf. ; . It is open to petitioner, however, to point out areas or specific instances in which the method used by respondent failed to reflect her true income. . Respondent's calculations for 1972 and 1973 first assume that all the waitresses (including petitioner) received an average tip of nine percent of the sales. We find this to be reasonable here. Petitioner testified that checks for lunch ran between $1.00 to $3.00 and tips generally ranged from 15 cents to 25 cents. This testimony is consistent with respondent's determination. Next, respondent divided petitioner's wages by the wages of all waitresses to determine her share of the total tips received. An implicit assumption here is that the sales of the *176 restaurant, and therefore the waitresses' average tips, remained constant throughout the day. In the evenings, however, the restaurant's customers were mainly families who would incur larger bills and tips were generally larger than during the day. To this extent, at least, an adjustment should be made. Petitioner worked only one dinner shift each week, and lunch prices were 15% to 40% lower than dinner prices; on the other hand, it is reasonable to assume that more customers could be served during lunch than at dinner due to a faster turnover. On this record, we believe that petitioner's tip income should be reduced by 20 percent to account for this factor. Petitioner also contends that since she spent time setting up before meals and cleaning up afterwards her tips were less than that determined by respondent. Since all the waitresses participated in these activities, petitioner's average tip as compared with the other waitresses' average tip would not be affected; previously, we held that the nine percent tip factor was reasonable. Moreover, petitioner generally arrived at work before she was required to be there in order to prepare and she occasionally stayed late because *177 of cleanup. Finally, petitioner argues that respondent has not allowed enough of an offset for amounts paid to busboys and amounts she had to pay for breakages and checks that her customers did not pay. Respondent allowed 10% as paid to busboys. This amount computes to be larger than the fifty cents daily she paid the busboys and thus leaves a margin for breakages and unpaid checks. Petitioner has not shown, nor is there anything in the record from which we can estimate, the amount of breakage or unpaid checks. We must, therefore, find for respondent on the amount of offset to be made to gross tips. Based upon the foregoing, we hold that for 1972 and 1973 respondent's reconstruction should be reduced by twenty percent. For 1974, respondent computed average tips based upon his reconstruction of tip income for 1972 and 1973 which showed petitioner earned an average hourly tip of $2.17. For the reasons stated above, we hold that respondent's reconstruction of income for 1974 should also be reduced by twenty percent. Respondent also determined a negligence penalty pursuant to section 6653(a). As noted before, petitioner failed to introduce into evidence any records of tip *178 income nor has she explained (absent her testimony that she kept accurate and timely records) her failure to keep those records. Since the burden is on petitioner to show that she was not negligent in maintaining her books and records, , we hold for respondent on this issue. Respondent's calculations of tip income in the notice of deficiency have several minor mathematical errors. Robin's percentage of wages as compared to wages for all waitresses should be.0599 instead of.0598 for 1972 and.0945 instead of.0965 for 1973. Because the error for 1972 results in a greater deficiency than determined, no adjustment should be made; for 1973, the error results in a reduced deficiency than determined and an adjustment should be made. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
2. In the notice of deficiency, respondent also included as owing F.I.C.A. taxes for each of the years in issue and additions to these taxes pursuant to section 6652(c). On respondent's motion, this Court by Order dated June 4, 1976 dismissed the case as it pertained to the F.I.C.A. taxes and section 6652(c) additions on the ground that this Court does not have jurisdiction over such matters.↩
3. Sammy Sanders is a petitioner herein solely by reason of filing a joint return. Hereafter, references to petitioner are to Robin Sue Sanders.↩
*. Computed 1972-73 average hourly tips of $2.17 x 1974 hours worked of 1,087.↩